## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA SEMENKO,                           )
individually, and on behalf of others       )
similarly situated,                         )
                                          )
               Plaintiff,                  )
                                            )         2: 12-cv-0836
      v.                                     )
                                            )
WENDY'S INTERNATIONAL, INC.,                 )
                                            )
               Defendant.                  )

### MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for disposition is the MOTION TO STRIKE, with brief in support, filed by Defendant, Wendy's International, Inc. ("Wendy's") (ECF Nos. 5 and 6), the RESPONSE in opposition filed by Plaintiff, Patricia Semenko, individually, and on behalf of others similarly situated, ("Semenko") (ECF No. 9), and the REPLY filed by Wendy's (ECF No. 10).  The matter has been thoroughly briefed and is ripe for disposition.  For the reasons that follow, the Motion to Strike will be granted.

### Factual Background

Semenko initiated this lawsuit on June 19, 2012, by the filing of a three-count Complaint in Class Action in which she raised both individual and class claims under the Americans with Disability Act, as amended ("ADA"), 42 U.S.C. §§ 1201, et seq., and the Pennsylvania Human Relations Act, as amended ("PHRA"), 43 Pa. Stat. Ann. §§ 951, et seq. and seeks "declaratory, injunctive, and compensatory relief from defendants (sic), Wendy's International, Inc., for denial of employment, failure to accommodate on the basis of actual, and regarded as or record of disability."  Complaint, at ¶ 1.

1

Semenko alleges that she worked for Wendy's for approximately thirty (30) years, first in hourly and later in managerial positions.  Semenko suffers from degenerative arthritis and in January 2007 took a disability leave to treat her cervical radiculopathy and lower back pain, which leave was approved for long-term disability benefits sponsored by her employer.  According to the Complaint, on or about November 14, 2007, Semenko was released by her treating physician to return to work full-time, with restrictions.  She requested to return to work with accommodations, but Wendy's denied her request.  Her employment with Wendy's was terminated on January 11, 2008.  *Id.* at  ¶¶ 7 - 14.

The Complaint states that Semenko's "action is brought and may be properly maintained as a class action pursuant to F.R.C.P. 23."  *Id.* at ¶ 27.   Distilled to its essence, Wendy's argument is that Semenko's class allegations:

> cannot be adjudicated within the parameters of Rule 23 such that a determination of classwide liability and relief can be reached.  Rather, establishing the unlawful discrimination alleged by [Semenko] would require determining whether class members are 'qualified' under the ADA [and PHRA], an assessment that encompasses inquiries . . . too individualized and divergent . . . to warrant certification under Rule 23(a) and (b)(2).

Def's Response at 1 (quoting *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 185-86 (3d Cir. 2009)).  Not surprisingly, Semenko responds that (i) she has alleged viable class claims and (ii) the motion to strike should be denied as premature as a motion for class certification has not been filed and the parties have not engaged in any pre-certification discovery.

### Standard of Review

Wendy's requests that the Court strike the class allegations contained in the Complaint pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).

a.     Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." " 'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.' " *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 284 F.R.D. 238, 243-44 (E.D. Pa. 2012) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393 (E.D. Pa. 2002)).   Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.*

b.     Federal Rule of Civil Procedure 23

"Rule 23 provides a one-size-fits all formula for deciding the class-action question." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.* Co., 559 U.S. 393 ---, 130 S.Ct. 1431, 1437 (2010).   Under Rule 23(d)(1)(D), a court adjudicating a class action may "require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly."   However, courts rarely grant motions to strike under Rule 23(d)(1)(D) prior to class discovery, doing so only where "[n]o amount of additional class discovery will alter th[e] conclusion" that the class is not maintainable.  *Thompson v. Merck & Co., Inc.*, 2004 WL 62710, at *2 (E.D. Pa. Jan. 6, 2004) (emphasis added).

Generally, courts do not consider whether a proposed class meets the Rule 23 requirements until after plaintiffs move for class certification.  However, in rare cases, the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder - Strauss Associates*, 640 F. 3d 72, 93 n. 30 (3d Cir.

3

2011) (ruling that the decision of the district court that a class could not potentially fit within Rule 23 determined on a motion to dismiss was premature.).[1]  As the United States Supreme Court has noted:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations.  Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).  Thus, even though the instant motion is a motion to strike, it is necessary to make a preliminary determination regarding the sufficiency of Semenko's class allegations.  *See Korman v. Walking Co.*, 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007) (treating the motion to strike and its opposition as a motion for class certification and its opposition).

Pursuant to Rule 23, a member of a class may sue on behalf of all members only if:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

---

[1] *Landsman* involved claims that defendants sent faxes to the class of plaintiffs without their consent.  640 F.3d at 72.  The district court held that the class could not meet Rule 23's typicality or predominance requirements because "there were too many 'crucial factual determinations to be made with respect to claims and defenses that will vary from party to party,' in particular, consent to receive faxes . . . ." *Id.* at 93.  The appellate court responded that "it is not clear that, as a matter of law, differences regarding consent are sufficient to defeat class allegations." *Id.* at 94.

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

## Discussion

A.   Neither Discovery Nor a Certification Motion is Necessary to Resolve the Instant Dispute

At the outset, the Court must determine whether discovery or a certification motion is necessary in order to resolve the pending Motion to Strike.   In this case, no discovery has taken place nor has a motion for class certification been filed.

A court must determine whether the action may be maintained as a class action as soon as is practicable after the action is filed.  Fed. R. Civ. P. 23(c)(1).  Discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action.

District courts have broad discretion to control the class certification process, and "[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court."  *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 209 (9th Cir. 1975).  "In **rare** cases where it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the class allegations before a motion for class certification is filed."  *NBL Flooring, Inc. v. Trumball, Inc. Co.,* No. 10-4398, 2011 WL 4481918, at *1 (E.D. Pa. Sept. 27, 2011) (emphasis added).  *See Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304 (9th Cir. 1977) (holding that class certification was properly denied without discovery where plaintiffs could not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures were not likely to produce persuasive information substantiating the class action allegations); *Woodard v. FedEx Freight East, Inc.,* 250 F.R.D. 178, 182 (M.D. Pa. 2008) (noting that a "district court will strike class action allegations without permitting discovery or waiting

for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action.")

"There is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification." *Bearden v. Honeywell Int'l Inc*., 720 F.Supp. 2d 932, 942 (M.D. Tenn. 2010). Accordingly, as will be discussed *infra*, because the Court finds and rules that the issues in this particular case "are clear and discovery on class certification is unnecessary," it will treat the motion to strike and its opposition as a motion for class certification and its opposition without permitting discovery or waiting for a certification motion to be filed. *Korman v. Walking Co*., 503 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007).

B.     Analysis of Class Certification Issue

As explained *supra,* Wendy's argues that the Court should strike the class allegations from the Complaint and order the case to proceed solely on Semenko's individual claims, which are not being challenged by Wendy's at this time.   In the Complaint, Semenko defines the putative class as follows:

> [A]ll persons who have been terminated or separated from employment following a leave of absence and/or otherwise not accommodated by defendant's failure to transfer to vacant and funded positions.

*Id*. at ¶ 28.[2]

Class certification is governed by Rule 23, which states, in relevant part:

> (a)  Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is no numerous that joinder of all members is impracticable;

---

[2]  In her Response to the Motion to Strike, Plaintiff changed the definition of the class and stated "that the proposed class would be limited to those individuals with permanent medical restrictions who applied for long-term disability benefits."  Pl.'s Resp. at 3.

(2)  there are questions of law or fact common to the class;

(3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; *and*

(4)  the representative parties will fairly and adequately protect the interests of the class.

(b)  Types of Class Actions.  A class action may be maintained *if Rule 23(a) is satisfied and if*:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A)  inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)  adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Federal Rule of Civil Procedure 23 (emphasis added).

The Court of Appeals for the Third Circuit clarified the type of thorough and rigorous analysis that must be performed to determine whether the prerequisites of Rule 23 are met:

> In deciding whether to certify a class under Fed. R. Civ. P. 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties.  In this appeal, we clarify three key aspects of class certification procedure.  First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met.  Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence.  Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits-including disputes touching on elements of the cause of action.  Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 307 (3rd Cir. 2008).  Our appellate court emphasized that "a class may not be certified without a finding that each Rule 23 requirement is met."  *Id.* at 310.

Semenko contends that (i) Wendy's has a "written policy . . . not to provide reasonable accommodation for permanent restrictions," Resp. at 4, and this generally applicable policy creates commonality for class purposes; (2) the class is sufficiently narrow because it is "limited to those individuals with permanent medical restrictions who applied for long-term disability benefits," Resp. at 3, and (3) the claims in the Complaint satisfy Rule 12(b)(6).[3]  Defendant argues that the elements of commonality, typicality, or adequacy under Rule 23(a) are not satisfied and, further, that Semenko cannot satisfy either of the two requirements of Rule 23(b) that she contends to have satisfied.   A party must satisfy all four of the requirements found in

---

[3]  The Court notes, however, that Wendy's did not move to dismiss the class allegations under Rule 12(b)(6), but rather moves to strike the class allegations under Rule 12(f), 23(c)(1)(A), and 23(d)(1)(D).

Rule 23(a) and at least one of the three criteria found in Rule 23(b). The Court will address the elements of Rule 23 seriatim.

    1.    <u>Rule 23(a)</u>

        a.    *Numerosity*

The numerosity requirement of Rule 23(a)(1) is satisfied where a named plaintiff demonstrates that the putative class includes more than forty (40) individuals. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Semenko alleges in her Complaint that "membership in the Class potentially numbers in the hundreds."  Complaint at ¶ 29.  Therefore, the Court finds that the numerosity requirement of Rule 23(a) is met.

        b.    *Commonality*

The commonality requirement of Rule 23(a)(2) is satisfied if the named plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class." *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).[4]  In *Wal-Mart Stores, Inc. v. Dukes,* the United States Supreme Court explained that a plaintiff attempting to satisfy the commonality requirement must demonstrate that the claims of the proposed class members "depend upon a common contention" that is "capable of classwide resolution."  -- U.S. --, 131 S.Ct. 2541, 2551 (2011),  In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class.  *Id*. at  2551 (remarking that a "common contention" is "capable of classwide resolution" if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

---

[4]  Although Rule 23(a)(2) refers to "questions of law or fact common to the class," the plural form of the word "question" has not been construed to require a showing of multiple common questions.  *In re: Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 597 n.10 (3d Cir. 2009).

The Court finds that the commonality requirement of Rule 23(a)(2) has not been met in this case.  In *Wal-Mart*, a Title VII case, the Supreme Court found a lack of commonality because no single discriminatory pay policy applied to the full class. In the instant case, Plaintiff argues that Wendy's has a discriminatory disability policy which applies to the full proposed class.  In support, she relies upon a determination letter from the EEOC in an attempt to establish that Wendy's has "admitted" that it has a disability policy which "constitutes a per se violation of the ADA."

Not surprisingly, Wendy's strongly disputes that it has "admitted" that it has a policy which is a per se violation of the ADA.   Further, while Title VII categorically prohibits discrimination, the ADA "only protects from discrimination those disabled individuals who are able to perform, with or without reasonable accommodation, the essential functions of the job they hold or desire." *Hohider*, 574 F.3d at 191.   Thus, there is an important distinction between Title VII and ADA claims for class action purposes and courts presiding over ADA cases must determine not just whether the employer acted improperly, but also "whether class members are 'qualified' - which includes whether they can or need to be reasonably accommodated - before a classwide determination of unlawful discrimination . . . can be reached." *Id*. at 191.

In approaching the commonality question, the Court is guided by the decision of the United States Court of Appeals in *Hohider v. United Parcel Service, Inc.*, 574 F.3d.169 (3d Cir. 2009).[5]   In *Hohider*, our appellate court reversed a class-certification order which had been entered in an action involving allegations that the defendant had engaged in a pattern or practice of unlawful discrimination against its employees under the ADA.  Specifically, *Hohider* involved

---

[5]  The Honorable Sandra Day O'Connor, *Associate Justice (Ret.)* of the Supreme Court of the United States, who sat by designation, was a member of the panel in this case.  *Hohider*, 574 F.3d at 171.

allegations that the defendant's company-wide policy which refused accommodations to employees who attempted to return to work after medical absences violated the ADA. *Id.* at 172.

The Court of Appeals noted:

> the elements necessary to establish a pattern or practice of unlawful discrimination on behalf of a class may not mirror those necessary to establish a valid individual claim of discrimination, [citation omitted], and so the fact that individualized inquiries might preclude certification of class members' various individual claims of relief is not necessarily dispositive of whether that class's pattern-or-practice claim satisfies Rule 23. It is the ADA, however, and not the *Teamsters*[6] evidentiary framework, that controls the substantive assessment of what elements must be determined to prove a pattern or practice of unlawful discrimination in this case.

*Hohilder*, 574 F.3d at 184-85 (emphasis added).

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Accordingly, in order to determine whether each claimant was subjected to prohibited discrimination, the Court must probe into factual details and then conduct a multi-step legal analysis. For example, as to each claimant, the Court must resolve each of the following questions:

---

[6] *International Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). In *Teamsters*, the government brought suit against a trucking company and a union representing employees of the company under Title VII of the Civil Rights Act. The government argued that both the company and the union exhibited a pattern and practice of discrimination in denying preferable, higher paying jobs to minorities. The Supreme Court noted that once a pattern and practice of discrimination was established, the individual need only demonstrate that he was denied a relevant employment benefit. *Id.* at 363. The burden would then shift to the defendant "to demonstrate that the individual . . . was denied an employment opportunity for lawful reasons." *Id.* In other words, where a single minority employee may not be able to establish discrimination simply by demonstrating that he was denied a job, where a pattern and practice of discrimination by the employer has already been proved, this mere denial of an employment benefit is sufficient to make out a claim for discrimination.

1.      Is the claimant "a qualified individual with a disability?"  This question alone depends upon several factors, one of which is when in time does the class member claim to have suffered discrimination.  The question is necessitated because the standards changed on January 1, 2009, when the ADA Amendments Act ("ADAAA") of 2008 became effective.  The ADAAA "broadened the category of individuals entitled to statutory protection from discrimination under the ADA."  *Chedwick v. UPMC*, Civil Action No. 07-806, 2011 WL 1559792, *19 (W.D. Pa. April 21, 2011).  However, the amendments to the ADA do  not apply retroactively.  Therefore, the Court must use the laws and interpretations of those laws in effect at the time of the complained-of actions.

2.      Can the individual perform the essential functions of the job with or without accommodation?  First, the Court will need to determine the job of  each claim member.  Then, the Court would have to determine the essential functions of the job.  This inquiry requires that the Court give consideration  to the "employer's judgment as to what functions of a job are essential," then balance those requirements against the limitations imposed by the impairment.  42 U.S.C. § 12111(8).  The Court would also need to determine whether the claim member could perform the job with or without an accommodation, notwithstanding the impairment.  *Id.*

3.      Did the class member allege a failure to accommodate and if so, was the requested accommodation reasonable?  "The term 'reasonable accommodation' may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignments to a vacant position, . . . ."  42 U.S.C. § 12111(9).

4.      Does the requested accommodation impose an undue hardship on the employer?  "The term 'undue hardship' means an action requiring significant difficulty or expense . . . ."

12

42 U.S.C. § 12111(10).  Multiple factors are to be considered when determining whether the accommodation would impose an undue hardship on the employer.  See 42 U.S.C. § 12111(10)(B).  For each class member, the Court would also have to determine whether Wendy's was aware of  the purported accommodation request and/or did the class member otherwise trigger the duty to engage in an interactive process.

     5.       Did the class member suffer prohibited discrimination?

Moreover, the Court would be required to analyze a variety of individualized defenses that Wendy's might have in response to the claims of class members, including whether the class member is judicially estopped from asserting a disability discrimination claim; did the class member pursue Social Security disability benefits; and/or did the class member pursue short- or long- term disability insurance benefits.   Def's Br. at. 14-15.

A number of courts have denied class certification when the class is defined so broadly that all persons with any disabilities, regardless of requested accommodations or modifications, are included.  *See Burkett v. U.S. Postal Serv.*, 175 F.R.D. 220, 223-24 (N.D.W.Va. 1997) (observing, in declining to certify class of persons with varying medical conditions, that "[i]n the view of several federal courts, the need for this individualized, fact-driven determination renders . . . ADA actions ill-suited for class treatment."); *Perdue v. Murphy*, 915 N.E. 2d 498 (Ind. Ct. App. 2009) (applying an Indiana rule that is not materially different from Rule 23 and declining to certify a class of persons injured by the Family and Social Services Administration's failure to reasonably accommodate their various disabilities and its accompanying denial of benefits due to their alleged failure to cooperate).

Nevertheless, there are situations when ADA class actions are certified.  *See, e.g., Bates v. United Parcel Serv.*, 204 F.R.D. 440 (N.D. Cal. 2001) (certifying class of plaintiffs with hearing

disabilities); *Wilson v. Pa. State Police Dep't*, No. Civ. A. 94-cv-6547, 1995 WL 4227750 (E.D.

Pa. July 17, 1995) (certifying class of candidates for police officer denied employment due to

their vision problems).   However, as the *Perdue* court noted, in these cases, "there appear to be

some unifying criteria, such as a common disability or requested accommodation, for example,

so that classwide evaluation of 'qualification' may be conducted without requiring a prohibitive

number of individual mini-trials." *Perdue*, 915 N.E.2d at 510.  *See Hohider*, 574 F.3d at 189

(suggesting that unifying criteria might include common conditions suffered or accommodations

sought).

      After reviewing the substantive requirements of the ADA and the definition of the

proposed class, the Court finds and rules that the commonality requirement of Rule 23(a)(2)

cannot be met as each class member must prove that he or she is a "qualified individual with a

disability," a highly individualized analysis which would require a "number of individual mini-

trials."  Perdue, 915 N.E.2d a 510.

      c.   *Typicality*

      The typicality requirement of Rule 23(a)(3) requires that a representative plaintiff must

show that his or her claims are "typical" of the claims asserted by the other potential class

members.  The inquiry pertaining to this requirement focuses on whether the named plaintiff is

"markedly different from the class as a whole." *Marcus v. BMW of North America*, LLC, 687

F.3d 583, 598 (3d Cir. 2012).  The prerequisite is met if the class representative's claims are

"generally the same" as those of the other class members in terms of both "the legal theory

advanced" and "the factual circumstances underlying that theory."  *In re Schering Plough Corp.*

*ERISA Litig.*, 589 F.3d at 599.  Typicality is measured through a three-part test that examines

whether: (i) the putative representative's claims are generally the same as the class members'

claims, relative to both the legal theory at issue and the underlying facts; (ii) the putative representative is subject to a defense that may not be alleged against many other class members and that may become a major issue in the litigation; and (iii) the putative representative's interests are "sufficiently aligned" with other class members.  *Id.*

Wendy's argues that Semenko's claim is not "typical" of the claims of the potential class members for several reasons. First, the ADA inquiry is highly individualized, and Semenko's claim may look factually different than other putative class members. For example, factual differences may include, *inter alia*, "the type of impairment, the degree of limitation, the job held, the essential functions of the job held (or to which transfer is sought), accommodation sought, and the degree to which the requested accommodation caused undue hardship."  Def's Br. at 16.  Furthermore, Wendy's argues that Semenko's legal theories may differ from those asserted by other class members.  For example, those "class members who contend they suffered discrimination after the ADAAA became effective would rely on different standards than Semenko to establish that they are disabled under the statutes."  *Id.*

Next,  Wendy's argues that some class members may be subjected to different defenses. For example, some class members will be subject to the defense of judicial estoppel if they pursued short or long-term disability benefits and/or Social Security Disability,[7] while others may not be subject to that defense.  There may be an individual statute of limitations defense applicable to Semenko's individual claim that does not apply to other class members.  *Id.* Likewise, the defense of reasonableness of accommodation will vary from case to case.

---

[7]  In her Complaint, Semenko alleges that she received long-term disability benefits during the time of her medical leave.  Complaint at ¶ 9.

Finally, Wendy's argues that the interests of Semenko do not align with the members of the purported class.  Specifically, while Semenko wanted to return to work,[8] some former employees may not want to return to work, while others may.  Some current employees may want specific accommodations other than a transfer to a vacant and funded position, and some may not.  *Id.*

In *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir. 1994), our appellate court explained that factual differences will not necessarily defeat typicality, particularly where an action challenges a policy or practice.  However, the Court of Appeals also recognized that typicality will be lacking due to intraclass conflicts if the legal theories of the named plaintiffs are at odds with those of the absentee class members.  *Id.* at 57-58.

"The premise of the typicality requirement is simply stated:  as goes the claim of the named Plaintiff, so go the claims of the class."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).  Here, as discussed *supra*, the facts and evidence needed to prove the claims of each member of the proposed class will be unique to each claimant.  Determining whether each claimant is entitled to recover under the ADA will be a highly individualized inquiry.  Proof of Semenko's individual claims will not prove the claims of other class members.

A plaintiff's individual claims are "typical" of other members of the class only if proof of the plaintiff's factual circumstances will also automatically prove the claims of all other members of the class.  "[C]ommon requests for relief . . . or common legal theories do not establish typicality when the facts required to prove the claims are markedly different among class members."  *Retired Chicago Police Ass'n v. Chicago*, 141 F.R.D. 477, 486 (N.D. Ill. 1992), *aff'd in part and rev'd in part*, 7 F.3d 585 (1993).  "If proof of the representatives' claims could

---

[8]  It appears that in late 2007, the Wendy's facility at which Semenko had worked was permanently closed.  Pl.'s Resp., Ex. 1.

not necessarily prove all of the proposed class members' claims, the representatives are not typical of the proposed members' claims." *Liberty Lincoln Mercury v. Ford Mktg. Corp.*, 149 F.R.D. 65, 77 (D.N.J. 1996).

For these reasons, the Court finds and rules that typicality is lacking because Plaintiff's individual claim will not prove the issue with respect to the claims of the other proposed class members.  Accordingly, the Court finds and rules that Plaintiff's claim is not typical of the purported class claims for the purpose of class-wide adjudication under Rule 23(a)(3).

d.    *Adequacy*

The final requirement under Rule 23(a) is that the named plaintiff must be able to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).  The United States Court of Appeals for the Third Circuit has advised that the "adequacy" inquiry has two components.  First, the adequacy inquiry "tests the qualifications of the counsel to represent the class."[9]  Second, it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 521 (3d Cir. 2004).

The "intraclass conflict" aspect of the adequacy analysis dovetails with the typicality inquiry.   Wendy's argues that two clear conflicts of interest between Semenko and other class members are apparent from the face of the Complaint.  First, a plaintiff is not an adequate representative where "any member of the putative class who reported to plaintiff would be claiming that plaintiff acted in violation of the law and of defendant's policies." *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 U.S. Dist. LEXIS 126643, *7 (N.D. Ill. Nov. 30,

---

[9]    The Court notes that Plaintiff's attorney is a skilled and experienced class action litigator whose qualifications are not challenged.

17

2010).  To the extent that any of the proposed class members reported to Semenko, she may have been involved in the Company's allegedly improper failure to accommodate.

Second, Wendy's argues that classes of  proposed putative members that include former employees and currently employed managers raise additional conflict of concerns "because allegations that current managers 'violated both defendant's policies and [applicable] law . . . could have a negative effect on current store managers' employment."  Def.'s Br. at 17 (quoting *Wright*, 2010 U.S. Dist. LEXIS 126643, at *7).

Plaintiff did not address these arguments in her response.  However, a plaintiff must satisfy all four of the prerequisites found in Rule 23(a).  Because the Court has ruled that Plaintiff cannot meet the prerequisites enumerated in Rule 23(a)(2) and (3), the Court need not address the adequacy requirement contained in Rule 23(a)(4).

b.   Rule 23(b)

Semenko relies upon both Rule 23(b)(2) and Rule 23(b)(3).  Because the Court has determined that the commonality and typicality prerequisites in Rule 23(a) are not met, it need not address in detail whether Plaintiff satisfies the requirements of Rule 23(b)(2) and/or Rule 23(b)(3).[10]

Certification under Rule 23(b)(2) is appropriate only when the relief sought is primarily injunctive or declaratory.  Further, Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.  *Wal-Mart Stores, Inc.,* 131 S.Ct. at 2557-58 (holding monetary claims for individualized relief do not

---

[10]  The Court notes that Plaintiff did not specifically address Wendy's arguments about her inability to meet the requirements of Rule 23(b)(2) and/or Rule 23(b)(3).  Rather, Plaintiff changed her class definition.  However, even if such changed class definition was accepted by the Court, it would not eliminate the highly individualized inquiries that must be made on the disability discrimination claims alleged in this lawsuit.

satisfy Rule 23(b)(2)).  Here, Semenko seeks  a variety of monetary damages of various types on behalf of the proposed class, including back pay with prejudgment interest, compensatory and punitive damages.  Complaint at ¶ 36.  Importantly, the requested monetary damages are not subject to across-the-board relief, but rather require individualized inquiries to determine the individual back pay, the individual compensatory damages, and the individual punitive damages. Given these circumstances, the class would become almost unmanageable, mandating multiple sub-trials to resolve all outstanding issues.

As to Rule 23(b)(3), the Court is not persuaded by Semenko's arguments with regard to predominance and does not find, especially in light of the highly individualized inquiries that will be necessary given the disability discrimination allegations, that a class action of the sort proposed by Semenko is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).  *Comcast Corp. v. Behrend*, -- U.S. --, -- S.Ct. ---, 2013 WL 1222646 (March 27, 2013) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).  *See also in Re LifeUSA Holding*, Inc., 242 F.3d 136, 144-47 (3d Cir. 2001) (holding that a situation that did not satisfy the less demanding commonality requirement of Rule 23(a) did not satisfy the predominance requirement of Rule 23(b)(3) as well).  As the court explained in *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 580 (D. Minn. 1995), predominance exists only "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."

As explained *supra,* individual issues clearly predominate over common issues with respect to both liability and damages in this case, and the proposed class members' claims cannot

be adjudicated in a one size fits all, class action format, as required by Rule 23(b)(3) for class certification.   Accordingly, the Court finds and rules that Semenko has not met the requirements for class action relief set forth in either Rule 23(b)(2) or Rule 23(b)(3).

### Conclusion

The Court recognizes that district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature.  However,  after a careful and deliberate review of the applicable case law and the parties' respective positions, the Court concludes that this is one of those rare cases in which no amount of discovery will demonstrate that the class can be maintained.

The Court finds and rules that Plaintiff has failed to demonstrate that all of the prerequisites in Rule 23(a) have been met.   Specifically, the Court concludes that Semenko does not satisfy the requirements of commonality and typicality.  Further, the Court also concludes that Semenko does not meet any of the criteria of Rule 23(b).  Accordingly, the motion to strike will be granted and the proposed class can not be certified.

An appropriate Order follows.


McVerry, J.

20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PATRICIA SEMENKO,                        )
individually, and on behalf of others    )
similarly situated,                      )
                                         )
       Plaintiff,        )
                                         )       2: 12-cv-0836
    v.                           )
                                         )
WENDY'S INTERNATIONAL, INC.,             )
                                         )
       Defendant.        )

## ORDER OF COURT

**AND NOW**, this 12th day of April, 2013, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that

Defendant's Motion to Strike is **GRANTED.**

Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D), Plaintiff is hereby **ORDERED**

that on or before April 22, 2013, she shall amend her Complaint in Class Action to reflect that

her class action allegations have been deleted.  Thereafter, Defendant shall respond on or before

May 6, 2013.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

21

cc:     Gregory G. Paul, Esquire
        Morgan & Paul, PLLC
        Email: gregpaul@morgan-paul.com

        James S. Urban, Esquire
        Jones Day
        Email: jsurban@jonesday.com

        Brandon J. Lester, Esquire
        Jones Day
        Email: blester@jonesday.com